```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
THOMAS J. MASSONE, as President and on behalf of                 :
the United States Security Officers                              :
                                                                 :
                              Plaintiff,                         :      20-cv-7906 (LJL)
                                                                 :
            -v-                                                  :      OPINION AND ORDER
                                                                 :
DONALD D. WASHINGTON and CENTERRA                                :
GROUP, LLC                                                       :
                                                                 :
                              Defendants.                        X
---------------------------------------------------------------- 
```

LEWIS J. LIMAN, United States District Judge:

Plaintiff Thomas J. Massone ("Plaintiff" or "Massone"), brings this action as President and on behalf of the United States Court Security Officers, asserting various claims against Defendants related to their COVID-19 policies.[1] Defendants Donald D. Washington ("Washington") and Centerra Group, LLC ("Centerra," and collectively, "Defendants"), each move to dismiss the complaint. Plaintiff cross-moves to amend the complaint.

For the following reasons, Defendants' motions to dismiss are granted and the motion to amend is denied.

## BACKGROUND

The following facts are drawn from Plaintiff's amended complaint, Dkt. No. 19, and are taken as true for the purposes of this motion.

Plaintiff is the President of the United States Court Security Officers Union (the "Union"), which represents approximately 2,200 Court Security Officers ("CSOs") who act as

---

[1] Plaintiff's claims include a claim under the First Amendment, a 42 U.S.C. § 1983 conspiracy claim, a claim of "imminent and substantial endangerment," a claim under New York Labor Law § 740, claims under 29 C.F.R. § 1910.132 (a) and (f), and a public nuisance claim.

Special Deputy U.S. Marshals.  The Union "is charged with representing the interests of all CSOs as to the terms and conditions of employment and regarding the health and welfare of its members," and "vigorously supports safety in the workplace and is actively involved in ensuring that its members are provided with a work environment that is protected from unnecessary dangers and hazards."  Dkt. No. 35 at 1-2.  Washington is the director of the U.S. Marshals Service, and Centerra is a private contract security provider for the U.S. Marshals Service and the employer of the CSOs.  Although the CSOs are contracted through Centerra, the Marshals Service implements the "policies, practices and procedures employed at the federal court facilities."  *Id.* at 1.

Plaintiff's complaint revolves around Defendants' response to the COVID-19 pandemic. Plaintiff alleges that Defendants have failed to property clean and sterilize the working and common areas in Federal Courthouses, failed to provide adequate personal protective equipment ("PPE") to the CSOs, and failed to adequately train CSOs regarding PPE, and that these actions "have created a substantial and specific danger to the public health and safety in that they have created a breeding ground for and spread of COVID-19."  Dkt. No. 19 ¶¶ 22-25.  Plaintiff alleges that as a result of these policies, individual CSOs "have been, and continue to be, exposed to COVID-19 and have in fact contracted coronavirus and died as a result while many others have been quarantined as a result of said failure."  Dkt. No. 19 ¶ 13.  Plaintiff also alleges that Defendant "maintains a pattern, policy, and/or practice, officially or unofficially, written or unwritten, designed to restrict, limit or deny the free association and protective speech of Plaintiffs amongst UNION members."  Dkt. No. 19 ¶ 27.  Plaintiff alleges that, to this end, Defendants retaliated against various CSOs by making "covert threats of disciplinary actions which could include suspension and possible termination of employment."  Dkt. No. 19 ¶ 31.

## PROCEDURAL HISTORY

Plaintiff filed his first complaint in the instant matter on September 25, 2020.  Dkt. No. 5.  Plaintiff filed an amended complaint on November 4, 2020.  Dkt. No. 19.  Defendant Centerra filed a motion to dismiss on December 4, 2020, Dkt. No. 26; Defendant Washington filed a motion to dismiss on December 18, 2020, Dkt. No. 31.  Plaintiff filed responses to both motions to dismiss on January 11, 2021.  Dkt. No. 35; Dkt. No. 36.  Plaintiff filed a cross-motion to amend the complaint on January 11, 2021, Dkt. No. 37.  Defendants each filed replies on January 25, 2021.  Dkt. No. 38; Dkt. No. 39.

## LEGAL STANDARD

Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015).  To survive a 12(b)(1) motion to dismiss for lack of standing, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'" *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)).  Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party. *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001).  However,

3

where the jurisdictional challenge is fact-based, the defendant may "proffer[ ] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).  In that case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno*, 932 F. Supp. at 95.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 . "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

Defendants move to dismiss both for lack of standing and for failure to state a claim. Because the Court finds that Plaintiff does not have standing to sue, the Court does not reach the merits, as there is no justiciable case or controversy present.

"Under Article III of the Constitution, the jurisdiction of federal courts is limited to the resolution of 'cases' and 'controversies.'" *Amidax*, 671 F.3d at 145. "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as the 'proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (alteration in original) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). This is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006).

Massone represents that is he is bringing this lawsuit "as President and on behalf of" the CSOs. Dkt. No. 19 at 1. Because he brings this suit in his capacity as President of the Union, he must demonstrate that the Union either has organizational standing to sue in its own right or has representative standing—also referred to as associational standing—to sue on behalf of its members. *See Rodriguez v. Winski*, 444 F. Supp. 3d 488, 492 (S.D.N.Y. 2020) ("Under current standing jurisprudence, an organization may assert two distinct types of standing: (1) organizational standing, and (2) associational standing.").

**I.   Organizational Standing**

"There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490 (1975). "To do so, the organization must meet the same standing test that applies to individuals." *Irish Lesbian and Gay Org. v.*

5

*Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998) (internal quotation and alteration omitted).  "In order to have standing to bring suit, a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision."  *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Thus, an organization must show "(1) a distinct and palpable injury in fact to itself as an organization; (2) that is fairly traceable to the challenged action; and (3) that a favorable decision would redress its injuries."  *Winski*, 444 F. Supp. 3d at 492 (S.D.N.Y. 2020) (citing *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011)).  "It is the responsibility of the complainant to clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute."  *Warth*, 422 U.S. at 518.

Defendants both argue that Plaintiff has not demonstrated that organizational standing exists here.  Centerra argues that "[t]o the extent the Amended Complaint alleges an injury at all, it alleges injuries sustained by individual CSOs, not the union itself (*e.g.*, alleged employment retaliation for speaking out against COVID-19)."  Dkt. No. 27 at 7.  Washington makes similar arguments: "Massone's allegations of 'veiled threats' of subjecting CSOs to 'possible disciplinary action' for objecting to COVID-19-related public health and safety concerns does not state any injury to the Union itself.  Nor does Massone allege facts supporting that the Government caused any injury to the Union."  Dkt. No. 32 at 7-8.  Plaintiff responds that the Union is recognized as the labor organization representing the CSOs and states that "the lack of effort by the Defendants to protect the CSO's affects not only the members but the Union itself as its representation of members is undermined by the Defendants disregard for member protection."  Dkt. No. 35 at 3; Dkt. No. 36 at 3.

Plaintiff's argument is tautological: the union itself, rather than just its members, is injured because it represents those members and its members are injured, and therefore its representation of its members is injured. For an organization to have standing, it is not enough that the defendant allegedly has engaged in a wrong that affects each union member individually and equally. The organization must suffer some distinctive injury *to itself. See Conn. Parents Union v. Russell-Tucker*, 2021 WL 3519947, at *4 (2d Cir. Aug. 11, 2021) ("An organization can satisfy the injury prong if it shows that the challenged action did not merely harm its "abstract social interests" but "perceptibly impaired" its activities." (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982))); *Equal Vote Am. Corp. v. Cong.*, 397 F. Supp. 3d 503, 508-09 (S.D.N.Y. 2019) (holding that Equal Vote America did not have organizational standing because the organization itself was not injured, even though the challenged activity affected all its members). Plaintiff has not alleged any facts supporting an inference that the Union itself suffered an injury. Rather, the only injuries referenced in the complaint are those suffered by the CSOs who were allegedly exposed to or contracted COVID-19, and those suffered by the CSOs who allegedly were retaliated against by Defendants. Neither of these is an injury to the Union itself, and thus neither can support a finding that the Union has organizational standing.

## II.     Representative Standing

Even if an organization does not have standing on its own right and has not alleged that it suffered any injury, it can still assert representative standing on behalf of its members by showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*Bano v. Union Carbide Corp.*, 361 F.3d 696, 713 (2d Cir. 2004) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Defendants argue that Plaintiff "cannot satisfy this test because the Amended Complaint exclusively seeks money damages for injuries allegedly suffered by unidentified, individual CSOs." Dkt. No. 27 at 6; *see also* Dkt. No. 32 at 8 ("Because Massone seeks only monetary damages, he cannot establish associational standing."). The Supreme Court in *Warth* articulated the importance of the nature of relief sought to determining whether an organization has standing to sue on behalf of its members:

> [W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can be reasonably supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.
>
> The present case, however, differs significantly as here an association seeks relief in damages for alleged injuries to its members. [The organization] alleges no monetary injury to itself, nor any assignment of the damages claims of its members. No award therefore can be made to the association as such. Moreover, in the circumstances of this case, the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of the injury would require individualized proof. Thus, to obtain relief in damages, each member of [the organization] who claims injury as a result of respondents' practices must be a party to the suit, and [the organization] has no standing to claim damages on his behalf.

*Warth*, 422 U.S. at 515. In *Bano,* 361 F.3d at 715, the Second Circuit held that "[i]f the involvement of individual members of an association is necessary, either because the substantive nature of the claim or the form of the relief sought requires their participation, [there was] no sound reason to allow the organization standing to press their claims . . . ." It concluded that "[i]n such circumstances, the standing of an association is limited to bringing claims arising out of injuries that the organization, not simply its members, suffered." *Id.*

8

Courts consistently decline to find representative standing when a plaintiff brings a claim on behalf of its members for money damages. *Id*. at 714 ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members."); *see also, e.g.*, *Irish Lesbian and Gay Org.*, 143 F.3d at 649 (affirming the lower court's decision that an organization's damages claim failed under the third prong of the *Hunt* test as "obviously correct"); *Sikhs for Justice Inc. v. Gandhi*, 614 F. App'x 29, 31 (2d Cir. 2015) (citing *Bano* and affirming the lower court's decision that organizational plaintiff seeking money damages did not have representative standing); *Lowell v. Lyft*, 352 F. Supp. 3d 248, 257 (S.D.N.Y. 2018) ("A request for compensatory damages, such as the request in Plaintiffs' Amended Complaint, requires the participation of a group's individual members."); *Richards v. N.Y.S. Dept. of Corr. Servs.*, 572 F. Supp. 1168, 1179 (S.D.N.Y. 1983) ("[I]f damages are sought on behalf of individual members, as is the case here, and not on behalf of the membership as a whole, then the relief requested differs for each member, and resolution of the case requires individual representation for each injured member. In such a case, the association in question does not have standing to sue on behalf of its members.").

Here, Plaintiff's complaint seeks only damages, in the form of "individualized relief" to the Union members, *Bano,* 361 F.3d at 715, rather than declaratory or injunctive relief. Any injuries the CSOs suffered, whether suffered by CSOs who were exposed to or contracted COVID-19, or suffered by CSOs who were retaliated against or threatened by Defendants, is "peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." *Bano*, 361 F.3d at 715 (quoting *Warth*, 422 U.S. at 515-16.). Moreover, the relief requested would require "the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. Plaintiff's briefing does not argue otherwise. It merely states

that "[t]he relief being sought pursuant to the present litigation seeks to address concerns for all Union members." Dkt. No. 35 at 5; Dkt. No. 36 at 5.  But the question is not whether concerns relevant to the litigation are shared by all Union members; rather, the questions are whether the complaint seeks individualized relief or whether the suit would require the participation of individual members.  Because Plaintiff has not demonstrated or even argued that the complaint does not seek such individualized relief or require such participation, the Union, and Massone as its President, does not have representative standing to pursue these claims for damages on behalf of its members.

### III.    Plaintiff's Cross-Motion to Amend the Complaint

Also before the Court is Plaintiff's cross-motion to amend the complaint.  Dkt. No. 37.

Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).  "Valid reasons for denying leave to amend include . . . futility of the amendment." *Mackensworth v. S.S. Am. Merch.*, 28 F.3d 246, 251 (2d Cir. 1994).

Plaintiff does not submit a proposed amended complaint with his motion to amend, nor does he indicate exactly what he proposes to amend.  With regard to the issue of standing on which this case is herein dismissed, Plaintiff suggests that "[t]o the extent further elaboration is required within the Amended Complaint to state the prospective relief sought, Plaintiff requests leave of this Court to further Amend its pleading." Dkt. No. 35 at 5; Dkt. No. 36 at 5.  The Court notes that merely amending the complaint to include a request for prospective relief would not necessarily create standing.  *See Bano*, 361 F.3d at 714 ("This does not mean, however, that an association automatically satisfies the third prong of the *Hunt* test simply by requesting equitable relief rather than damages.  The organization lacks standing to assert claims of injunctive relief

10

on behalf of its members where the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof, or where the relief requested would require the participation of individual members in the lawsuit." (internal quotations and alterations omitted)).

## CONCLUSION

Defendants' motions to dismiss are GRANTED without prejudice. Plaintiff's cross-motion to amend is DENIED without prejudice to refile with a proposed amended complaint and a statement concerning how the amendments address the deficiencies within thirty days of the entry of this order.

The Clerk of Court is respectfully directed to close Dkt. Nos. 26, 31, and 37.

SO ORDERED.

Dated: August 30, 2021  
      New York, New York  
                                              LEWIS J. LIMAN  
                                              United States District Judge