# **EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────x
THOMAS J. MASSONE, as President and on behalf of the
UNITED STATES COURT SECURITY OFFICERS~~,~~ **UNION, INCLUDING ITS INDIVIDUAL MEMBERS**

                                      Plaintiffs,        **~~FIRST~~SECOND AMENDED COMPLAINT AND JURY DEMAND**

               -against-                          1:20-CV-07906 (LJL)

DONALD W. WASHINGTON, Director, United States Marshals
Service and CENTERRA GROUP, LLC, JOHN DOES 1-5,

                                Defendants.
─────────────────────────────────────x

## JURISDICTION AND VENUE

1.    The Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§ 1981 and 1983, the First and Fourteenth Amendments of the United States Constitution, 29 CFR 1910 and pendent claims under the Constitution and Laws of the State of New York.

2.    Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) (2), because "a substantial part of the events or omissions giving rise to the claim occurred" in this District.

## THE PARTIES

3.    Plaintiff, Thomas J. Massone, is President of the United States Court Security Officers Union (the Union), a labor union located at 35 Market Street, Suite # 30, Poughkeepsie, New York, 12601 The Union represents approximately 2,200 Court Security Officers (CSOs) sworn as Special Deputy United States Marshals throughout the United States of America and Its

1

territories assigned to ensure the safety of all Federal Courts and court employees against unauthorized, illegal and potentially life threatening activities. In the Second Judicial District, as with many other judicial districts nationwide, security coverage is extended to various other components of the federal judicial system, namely the Drug Enforcement Administration (DEA), U.S. Tax Courts, U.S. Court of International Trade, U.S. Court of Veteran Appeals, Executive Offices of the United States Attorneys, U.S. Military Courts and other federal law enforcement offices via inter-agency agreements. For more than a three (3) decades the United States Marshals Service (USMS) in the Second Judicial Circuit has engaged the services of the private sector to provide highly qualified and exceptionally skilled individuals to assist in this mission. These individuals are the United States Court Security Officers (CSOs) for the Southern District and Eastern District of New York.

4. The herein labor union is charged with representing the interests of all CSOs as to the terms and conditions of employment and regarding the health and welfare of its members. The union vigorously supports safety in the workplace and is actively involved in ensuring that its members are provided with a work environment that is protected from unnecessary dangers and hazards. **This action is brought on behalf of the UNION and the UNION members its represents.**

5. Defendant, Donald W. Washington, is the Director of the United States Marshals Service.

6. Defendants, individually and/or collectively, are responsible for protecting the federal judiciary, its employees and institutions and the safe use of those institutions by the general public.

7. Defendants, individually and/or collectively, are responsible for promulgating rules and regulations that protect the federal judiciary, its employees and institutions and the safe use of those institutions by the general public.

8. Specifically, Defendants, individually and/or collectively, are charged with creating and evaluating policies that address safety measures related to the spread of COVID-19 in federal courthouses that is hazardous to the health or safety of the federal judiciary, its employees, contractors and the general public.

9. Upon information and belief, throughout the events hereinafter described, Defendant Washington was acting in the course of his duties and functions and within the scope of his employment with the USMS.

7. Upon information and belief, Defendant Washington implemented the policies, practices and customs of the USMS complained of herein

8. Defendant, Centerra Group, LLC (Centerra), is a private contract security provider for the USMS. Centerra is the employer of the CSOs. JOHN DOES 1-5 are individuals at this time working at the direction of Defendant Centerra pursuant to the incidents and allegations contained herein.

**FACTS**

9. Plaintiff CSOs are employed by the private contractor Centerra and represented by the United States Court Security Officers Union ("UNION")

10. Plaintiff Thomas J. Massone is the duly elected President of the UNION.

11. In his capacity as UNION President, Thomas J. Massone beginning in March of 2020 continuing to present has continued to vigorously object to the complete failure of Defendants to provide a safe working environment by properly cleaning and sterilizing the CSOs

work environment, establishing sustainable safety protocols for the continuance of cleaning and sterilization of the work place environment or to provide the UNION members with suitable Personal Protective Equipment (PPE) in their front line capacity as CSOs confronting COVID-19 and the reopening of the United States Courthouses.

12. During the course of Plaintiffs' employment with Defendant and as UNION President, Plaintiff Thomas J. Massone has consistently and vigorously objected to the lack of PPE and properly sterilized work areas for UNION members to combat the very clear and present danger COVID-19 issues have manifested within the federal court system as Court's began to reopen.

13. As a result of the failure of Defendants to provide PPE to UNION members and properly sterilized work areas within the Court system, UNION members have been, and continue to be, exposed to COVID-19 and have in fact contracted coronavirus and died as a result while many others have been quarantined as a result of said failure. ~~[1] **As referenced in the footnote below,** the death of CSO Anthony Charles McGrew, age 51, assigned to the Federal Courthouse in Brunswick, Georgia, was attributed to Covid-19. As also noted below, it is believed that the USMS has made a determination that his Covid-related death occurred "in the line of duty." This determination should make CSO McGrew's beneficiaries eligible for benefits~~

**14. As a result of the actions of the Defendants herein, including their failure to provide safe working conditions to address the COVID 19 concerns existing within the workplace of the UNION members maintained by Defendants, UNION members have actually been irreparably harmed, and continue to be exposed to unsafe work environments.**

**15.    As a result of Defendants past and continued actions, the UNION and/or its members will suffer injury, loss or damage by being exposed to the hazardous work conditions being created and maintained by the Defendants that are immediate, irreparable and will render a resulting judgment on the merits of Plaintiffs claims in effectual if injunctive relief is not granted by this Court.**

16.    On Saturday, ~~Aug.~~**August** 15, 2020, CSO Anthony Charles McGrew, age 51, assigned to the Federal Courthouse in Brunswick, Georgia, died of Covid-19. Upon information and belief, the USMS determined his ~~Covid~~**Coved** related death to be a "line of duty death." Moreover, upon information and belief, to date, in the Southern and Eastern Districts of New York, six (6) CSOs have contracted Covid-19 and as a result over fifty-five (55) CSOs have been ordered under New York State Department of Health mandatory quarantine from Covid-19 exposure. Upon information and belief, in the New York State Court System one (1) Court Officer, two (2) Court Assistants and three (3) New York State Court Judges have died from Covid-19.

**17.    The death of CSO Anthony Charles McGrew, age 51, assigned to the Federal Courthouse in Brunswick, Georgia, was attributed to Covid-19. As also noted below, it is believed that the USMS has made a determination that his Covid-related death occurred "in the line of duty." This determination should make CSO McGrew's beneficiaries eligible for benefits** under the provisions of the Public Safety Officer Benefits Act (hereinafter "PSOB") [34 USC 10284 (8)].

**18.    The UNION and/or UNION members, collectively and/or individually, will be irreparably harmed in the core mission of the UNION and its fundamental purpose to be able to zealously represent all UNION members in all matters regarding workplace**

5

**health and safety issues, thereby eviscerating the trust of UNION members in the UNION if the Defendants are allowed to openly and notoriously disregard the UNION and the UNION members safety.**

1419. The PSOB provides for benefits upon the death of a person acting as a Public Safety Officer. Court Security Officers are designated to act as "Special Deputy United States Marshals" and as such, while performing those duties as a Court Security Officer in United States Courts and Courthouse Facilities are clearly acting as "Public Safety Officers" as that term is defined in the Public Safety Officer Benefits Act. Insofar as is relevant to the instant case, the PSOB defines a Public Safety Officer as "an individual serving a public agency in an official capacity, with or without compensation, as a law enforcement officer, as a firefighter, or as a chaplain."

1520. Beyond cavil, Court Security Officers are acting in the capacity as "law enforcement officers" in that they act to enforce the law by *inter alia,* controlling public access to Court Facilities, providing personal protection to Court personnel such as Judges, Clerks, and other administrative personnel, and maintaining order in and about courtrooms and courthouse facilities, as well as other duties as assigned by competent authority. They are authorized to make arrests and when they are subject to assaultive conduct, defendants are frequently charged with assault upon a federal officer. See, *e.g.,* Exhibit A.

1621. However, notwithstanding CSO McGrew's law enforcement duties, his status as a Public Safety Officer, and, thus, his qualification for benefits under the PSOB may ultimately (and unfairly) be denied to his beneficiaries because of a previous determination by the PSOB Benefits Administrator that Court Security Officers — while acting pursuant to their duties as Special Deputy United States Marshals and providing Court Security Officer services — are not

"serving a public agency in an official capacity" as that term is defined in Public Safety Officer Benefits Regulations because CSO's are employees of a contractor that provides their services to the United States Marshals Service under the terms of a contract.

~~17~~22.  That CSO's such as CSO McGrew may later be determined to be ineligible for benefits under the PSOB - if they are exposed to Covid-19 while performing their official duties and ultimately succumb to the illness — argues strongly in favor of both the need for appropriate protective measures to be in place to afford them as much protection as possible from the virus and, further, for the provisions of the PSOB to clearly recognize the CSO as the law enforcement officers that they most assuredly are.

~~18~~23.  In fact, the relevant regulation, 28 C.F.R. § 32.3, provides that (regarding the requirement in the PSOB that a covered individual be acting in an "official capacity," states that "[a]n individual serves a public agency in an official capacity only if— (1) He is officially authorized, -recognized, or -designated (by such agency) as functionally within or -part of it; and, (2) His acts and omissions, while so serving, are legally those of such agency, which legally recognizes them as such (or, at a minimum, does not deny (or has not denied) them to be such).

~~19~~24.  Clearly, as the United States Marshals Service recognizes CSO's death as occurring "in the line of duty,"[~~2~~1] it follows only logically that the death is of one who was undoubtedly acting as a Public Safety Officer as that term is defined in 34 USC 10284 (8), and was acting in an "Official Capacity" as that term is defined in 28 C.F.R. § 32.3.

~~20~~25.  Plaintiff Thomas J. Massone became aware of an activity, policy or practice of Defendant that violated a law, rule or regulation and created a substantial and specific danger to

---

[1]The names of three (3) Court Security Officers killed in the line of duty appears on the United States Marshals Service Honor Roll. See, https://www.usmarshals.gov/history/roll_call.htm

the public health or safety. Moreover, Plaintiff, Thomas J. Massone became aware of an effort by Defendant Centerra to intimidate and force CSOs under New York State mandated Covid quarantine to return to work in advance of the required quarantine period (see~~,~~ Exhibit B, text message to quarantined CSOs).~~3~~[2] Further, upon information and belief, CSOs who disregarded this, we submit, unlawful directive were advised would suffer adverse consequences.

~~21~~**26**. As a result of Plaintiffs `continuance to unwavering lawful public objections to said public health or safety concerns, Defendant's infringed upon Plaintiffs `protected speech and the association of the UNION by veiled threats of subjecting CSOs to possible disciplinary action that could necessarily lead to suspension from employment and possible termination from employment, with the goal of creating a chilling effect upon the UNION to associate and/or effectuate their First Amendment right to protected speech.

~~22~~**27**. The activity of Defendant of which Plaintiff became aware ~~was~~**and complains is**:

> a) failing to properly clean/sterilize the working and common areas within the Federal Courthouse to ensure a safe working environment for UNION members and other individuals entering the courthouses, including judges, attorneys, court personnel and litigants;
>
> b) failing to provide adequate PPE to UNION members working within Federal Courthouses;

---

[2] The attached Exhibit B clearly requests CSOs reveal personal medical information and advocates apparent violations of the current New York State Department of Health Order all at the presumed direction of the USMS and under color of law.

   c) engaging in acts of intimidation upon UNION activities with an intent to chill the advocacy for safety measures to be provided by Defendants to UNION members.

~~23~~**28**. Defendant's actions, policies and/or practices have created a substantial and specific danger to the public health and safety in that they have created a breeding ground for and spread of COVID-19.

~~24~~**29**. Defendants have refused~~,~~ or otherwise failed, to provide Personal Protective Equipment (PPE) to Plaintiffs herein in respect to issues surrounding ~~COVID~~**COV ID**-19.

~~25~~**30**. Defendants have refused, or otherwise failed, to train Plaintiffs with respect to the use, maintenance, care for or disposal of PPE with respect to issues surrounding COVID-19.

~~26~~**31**. Upon information and belief, during all times mentioned herein, the Defendants herein were acting under color of law.

~~27~~**32**. Upon information and belief, Defendant maintains a pattern, policy and/or practice, officially or unofficially, written or unwritten, designed to restrict, limit or deny the free association and protective speech of Plaintiffs amongst UNION members.

~~28~~**33**. To date, Defendants have failed to provide the UNION members with sufficient PPE gear to address health and safety concerns with respect to issues surrounding COVID-19.

~~29~~**34**. To date, Defendants have failed to properly inspect and establish sufficient protocols within Federal Courthouses for continual monitoring and disinfecting of the Federal Courthouses to address health and safety concerns with respect to issues surrounding COVID-19.

<u>**CAUSES OF ACTION**</u>

<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>

~~30~~35.  Plaintiffs repeat and re-allege each and every allegation set forth in the paragraphs above with the same force and effect as if set forth in full herein.

~~31~~36.  By their conduct and under color of law, federal and state, Defendants deprived Plaintiffs of their First and Fourteenth Amendment rights to free speech and freely associate with others including, but not limited to, by subjecting Plaintiffs to covert threats of disciplinary actions which could include suspension and possible termination of employment in an effort to deny individual rights of free speech and UNION members representation and protection with respect to the failure of Defendants to provide safety within Federal Courthouses in response to COVID-19 safety and health concerns in violation Plaintiffs' rights, privileges and immunities as guarantees under the United States Constitution, under 42 U.S.C. § 1983 and under the Constitution and laws of the State of New York.

~~32~~37.  Because of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, believed to be in excess of One Million Dollars ($1,000,000.00). Additionally, Plaintiff seeks punitive damages in the amount of Two Million Dollars ($2,000,000.00). **Plaintiff requests the Court issue an Order enjoining Defendants from continuing its practices as complained of herein.**

## AS AND FOR A SECOND CAUSE OF ACTION
## 42 U.S.C. § 1983 CONSPIRACY

~~33~~38.  Plaintiff repeats and re-alleges each and every allegation set forth in the paragraphs above with the same force and effect as if set forth in full herein.

~~34~~39.  Defendants, acting under color of federal and state law, conspired with one another to deprive Plaintiffs of their constitutional rights, including the rights to free speech and free association.

~~35~~40.   As part of the conspiracy, the Defendants did, without cause or justification, among other acts, subject Plaintiffs to covert threats of disciplinary actions which could include suspension and possible termination of employment in an effort to deny individual rights of free speech and UNION members representation and protection with respect to the failure of Defendants to provide safety within Federal Courthouses in response to COVID-19 safety and health concerns in violation Plaintiffs' rights, privileges and immunities as guarantees under the United States Constitution, under 42 U.S.C. § 1983 and under the Constitution and laws of the State of New York.

~~36~~41.   Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of One Million Dollars ($1,000,000.00). Additionally, Plaintiffs seeks punitive damages in the amount of Two Million Dollars ($2,000,000.00). **Plaintiff requests the Court issue an Order enjoining Defendants from continuing its practices as complained of herein.**

## AS AND FOR A THIRD CAUSE OF ACTION

### Imminent and Substantial Endangerment

~~37~~42.   Plaintiffs repeats and re-alleges each and every allegation set forth in the paragraphs above with the same force and effect as if set forth in full herein.

~~38~~43.   The actions and/or lack thereof of the Defendants, as particularly described above, have contributed and are continuing to contribute to the unsafe conditions within the Federal Court system as to present an imminent and substantial endangerment to health and safety of Plaintiffs, as well as other persons within Federal Courthouses.

~~39~~44.   Because of the foregoing~~,~~. Plaintiff has been damaged in an amount to be determined at trial, believed to be in excess of One Million Dollars ($1,000,000.00).

Additionally, Plaintiff seeks punitive damages in the amount of Two Million Dollars ($2,000,000.00). **Plaintiff requests the Court issue an Order enjoining Defendants from continuing its practices as complained of herein.**

## AS AND FOR A FOURTH CAUSE OF ACTION
### Violation of
### New York State Labor Law § 740

~~40~~**45**.   Plaintiffs repeat and re-allege each and every allegation set forth in the paragraphs above with the same force and effect as if set forth in full herein.

~~41~~**46**.   Section 740 of the New York Labor Law, commonly referred to as the "whistleblower" statute, specifically prohibits retaliatory personnel actions by employers against employees who disclose, object to, or refuse to participate in an unlawful activity, policy or practice of the employer that endangers the public health or safety.

~~42~~**47**.   Plaintiffs revealed, objected to and attempted to lawfully refuse to participate in the activity, policy and/or practice of Defendants described above.

**48.**   **Plaintiff requests the Court issue an Order enjoining Defendants from continuing its practices as complained of herein.**

## AS AND FOR A FIFTH CAUSE OF ACTION

~~43~~**49**.   Plaintiffs repeat and re-allege each *and* every allegation set forth in the paragraphs above with the same force and effect as if set forth in full herein.

~~44~~**50**.   29 CFR 1910.132 (a) specifically requires Defendants to provide to Plaintiffs herein personal protective equipment for eyes~~,~~**,** face, head, and extremities, protective clothing, respiratory devices, and protective shields and barriers~~,~~**,** shall be provided~~,~~**,** used~~,~~**,** and maintained in a sanitary and reliable condition wherever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants

encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact.

~~45~~ **51**.    Defendants have refused, or otherwise failed, to provide such PPE to Plaintiffs herein with respect to issues surrounding COVID-19.

### AS AND FOR A SIXTH CAUSE OF ACTION

~~46~~ **52**.    Plaintiffs repeat and re-allege each and every allegation set forth in the paragraphs above with the same force and effect as if set forth in full herein.

~~47~~ **53**.    29 CFR 1910.132 (f) specifically requires Defendants to provide training to each employee who is required by this section to use PPE. Each such employee shall be trained to know at least the following:

(i) When PPE is necessary;

(ii) What PPE is necessary;

(iii) How to properly don, doff, adjust, and wear PPE;

(iv) The limitations of the PPE; and

(v) The proper care, maintenance, useful life and disposal of the PPE.

~~48~~ **54**.    Defendants have refused, or otherwise failed, to train Plaintiffs with respect to the use, maintenance, care for or disposal of PPE with respect to issues surrounding COVID-19.

**55.**    **Plaintiff requests the Court issue an Order enjoining Defendants from continuing its practices as complained of herein.**

### AS A FOR A SEVENTH CAUSE OF ACTION
### Public Nuisance

13

~~49~~56. Plaintiffs repeat and re-allege each and every allegation set forth in the paragraphs above with the same force and effect as if set forth in full herein.

~~50~~57. The actions of the Defendants concerning the failure to properly disinfect Federal Courthouses and take remedial measures to ensure the safety of UNION members and other individuals while within Federal Court facilities.

~~51~~58. The UNION, as representative of approximately 2,200 members, asserts that its members who have or who may come into contact with COVID-19 have suffered special injuries.

**59.      Plaintiff requests the Court issue an Order enjoining Defendants from continuing its practices as complained of herein.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court grant the following relief:

A.     Award plaintiff compensatory and punitive damages;

**B.     Issue an Order enjoing Defendants from:**

   **i)    refusing to properly clean/sterilize the working and common areas within the Federal Courthouse to ensure a safe working environment for UNION members and other individuals entering the courthouses, including judges, attorneys, court personnel and litigants**

   **ii)   refusing to provide adequate PPE to UNION members working within Federal Courthouses;**

   **iii)  Prohibiting Defendants, including it agents, employees and/or representatives, from engaging in acts of intimidation upon UNION activities with an intent to chill the advocacy for safety measures to be provided by Defendants to UNION members.**

~~B~~**C**.     Award plaintiff its costs, including reasonable attorney's fees, technical

consultant fees and expert witness fees as authorized by 42 U.S.C. § 6972(e),

14

including said fees and expenses incurred or to be incurred by plaintiff to insure compliance with the terms and conditions of any settlement or judgment in this action;

~~C~~D.    Retain jurisdiction in this action for two years after the Defendants achieve compliance with all the terms and conditions of any settlement or judgment in this action; and

~~D~~E.    Award such other relief as this Court may seem just, proper and equitable.

Dated: White Plains, New York
~~November 4, 2020~~September 29, 2021

                            **Respectfully submitted,**

                            **Pat Bonanno & Associates, P.C.**

                            **By:**   **Thomas M. Gambino, Eq. — of counsel (TG6332)**
                                    **Attorneys for Plaintiffs**
                                    **175 Main Street**
                                    **White Plains, NY 10601**
                                    **p bacounse I @gmail.com**
                                    **(914) 948-5545**