UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

Docket # 20-cv-07960 (LJL)

THOMAS J. MASSONE, as President and on
Behalf of the UNITED STATES COURT
SECURTY OFFICERS,

                Plaintiffs,

   --against--

DONALD W. WASHINGTON, Director,
United States Marshals Service & Centerra
Group, LLC,

                Defendants.
-----------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO
# MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
# BY DEFENDANT CENTERRA GROUP, LLC

Law Office of Pat Bonanno & Associates, PC

Pat Bonanno, Esq. (PB8549)
Thomas M. Gambino, Esq. (TG6332)
Attorneys for Plaintiffs
175 Main Street
White Plains, NY  10601
pbacounsel@gmail.com
(914) 948-5545 (Phone)
(866) 777-1418 (Facsimile)

# Table of Contents

**Pages**

Table of Authorities ................................................................................................ ii

Preliminary Statement ...............................................................................................1

**ARGUMENT**

**Point I**   **PLAINTIFF ASSOCIATION HAS STANDING
              TO SUE ON BEHALF OF ITS MEMBERS** ........................................................3

**Point II**  **THE PRIMARY JURISDICTION DOCTRINE
              DOES NOT BAR PLAINTIFFS' ACTION** ........................................................7

**Point III** **DEFENDANT IS NOT ENTITLED TO DISMISSAL
              OF THE AMENDED COMPLAINT PURSUNT TO RULE 12(b)(6)** ...........10

**Conclusion** ...........................................................................................................15

# Table of Authorities

**CASES**                                                                                                                        **Pages**

*Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007) ……………………………………………….11

*Ellis v. Tribune Television Co.*, 443 F.3d 71 (2d Cir. 2006)............................................................8

*Fox v. Int'l Conf. of Funeral Serv. Examining Bds.*,
242 F. Supp. 3d 272, 280 (S.D.N.Y. 2017)...........................................................................12, 13

*IGLO v. Giuliani, 143 F3d 638, 649-651 (2nd Cir., 1998)*......................................................4, 5, 6

*Johnson v. Revenue Management Corporation,* 169 F.3d 1057, 1059 (7th Cir. 1999) .................10

*Palmer v. Amazon.com, Inc.*, 2020 U.S. Dist. LEXIS 203683 at *13 .............................................8

*Reddington v. Staten Island University Hospital,* 511 F.3d 126, 131 (2nd Cir. 2007) ..................10

*Rutter v. Picerne Development Corp. of Florida, et al,*
2007 U.S. Dist. LEXIS 90690 (SDTX) ...................................................................................... 11

*Stinnes Intweoil, Inc. v. Apex Oil Co., et al,* 604 F.Supp. 978, 979 (SDNY 1985) ..................6, 10

## STATUTES, CODES AND RULES

Rule 12(b)(6) ............................................................................................................ in passim

Rule 15 .................................................................................................................... in passim

42 USC § 1983 ....................................................................................................... in passim

**Preliminary Statement**

As stated in Plaintiffs' Second Amended Complaint, Plaintiff, Thomas J. Massone, is President of the United States Court Security Officers Union (the Union), which is a labor union representing approximately 2,200 Court Security Officers (CSOs) sworn as Special Deputy United States Marshals throughout the United States of America and Its territories assigned to ensure the safety of all Federal Courts and court employees against unauthorized, illegal and potentially life threatening activities.

In the Second Judicial District, as with many other judicial districts nationwide, security coverage is extended to various other components of the federal judicial system, namely the Drug Enforcement Administration (DEA), U.S. Tax Courts, U.S. Court of International Trade, U.S. Court of Veteran Appeals, Executive Offices of the United States Attorneys, U.S. Military Courts and other federal law enforcement offices via inter-agency agreements.

For more than a three (3) decades the United States Marshals Service (USMS) in the Second Judicial Circuit has engaged the services of the private sector to provide highly qualified and exceptionally skilled individuals to assist in this mission. These individuals are the United States Court Security Officers (CSOs) for the Southern District and Eastern District of New York.

CSO's are contracted through Defendant Centerra Group to provide the aforementioned security services. However, the policies, practices and procedures employed at the federal court facilities in which the CSO's are assigned are implemented by the United States Marshall Service.

The Plaintiff labor union is charged with representing the interests of all CSOs as to the terms and conditions of employment and regarding the health and welfare of its members. The union vigorously supports safety in the workplace and is actively involved in ensuring that its

1

members are provided with a work environment that is protected from unnecessary dangers and hazards.

Defendants, individually and/or collectively, are charged with creating and evaluating policies that address safety measures related to the spread of COVID-19 in federal courthouses that is hazardous to the health or safety of the federal judiciary, its employees, contractors and the general public.

As alleged in Plaintiffs' Second Amended Compliant, the Defendants have individually and/or collectively failed to adequately address the safety of CSO's pursuant to COVID-19 concerns, including the Defendants' failure to provide Personal Protective Equipment (PPE), failed to properly train CSO's with respect to COVID-19 concerns or provide sterile working conditions. Further, Defendants have engaged in a course of conduct to chill the Plaintiff Union's advocacy for its members, including the threat of termination from employment and discipline of its members for opposing the actions of Defendants as alleged in the Second Amended Complaint.

Plaintiff respectfully submit they have adequately pled their causes of action within the scope of Rule 8, and that Defendants arguments are upon form over substance. However, if this Court is inclined to grant Defendants' motion on the pleadings, Plaintiffs cross move to amend their Complaint pursuant to Rule 15.

# ARGUMENT

## Point I

### PLAINTIFF UNION HAS STANDING TO SUE ON BEHALF OF ITS MEMBERS

Contrary to Defendants' claim, Plaintiffs have sufficiently stated claims in its Second Amended Complaint to demonstrate the Plaintiff Union's organizational and representative standing to sue. Plaintiff seeks not only monetary damages but injunctive relief to address the ongoing actions of Defendants as alleged in the Second Amended Complaint.

> It is well established that "organizations are entitled to sue on their own behalf for injuries they have sustained." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19, 102 S. Ct. 1114, 1124 n.19, 71 L. Ed. 2d 214 (1982). To do so, the organization must "meet the same standing test that applies to individuals . . . . [by] showing actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Spann v. Colonial Village, Inc.*, 283 U.S. App. D.C. 216, 899 F.2d 24, 27 (D.C. Cir. 1990).
>
> The denial of a particular opportunity to express one's views can give rise to a compensable injury. *See*, *e.g.*, *Dellums v. Powell*, 184 U.S. App. D.C. 275, 566 F.2d 167, 194-195 (D.C. Cir. 1977) (holding that the loss of an opportunity to stage a lawful demonstration on the Capitol steps was compensable in damages); *Tatum v. Morton*, 183 U.S. App. D.C. 331, 562 F.2d 1279, 1282-83 (D.C. Cir. 1977) (finding plaintiffs could recover damages for the loss of the opportunity to communicate their anti-war message to the public in the manner they had selected); *see also Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 308, 106 S. Ct. 2537, 2543, 91 L. Ed. 2d 249 (1986) (Marshall, J., concurring) ("When a plaintiff is deprived, for example, of the opportunity to engage in a demonstration to express his political views . . . . there is no reason why such an injury should not be compensable in damages."). An organization, as well as an individual, may suffer from the lost opportunity to express its message. *Cf. Pacific Gas and Elec. Co. v. Public Utilities Comm'n of Cal.*, 475 U.S. 1, 8, 106 S. Ct. 903, 907, 89 L. Ed. 2d 1 (1985) ("The identity of the speaker is not decisive in determining whether speech is protected. Corporations and other associations, like individuals, contribute to the 'discussion, debate, and the dissemination or information and ideas' that the First Amendment seeks to foster.") (quoting *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 783, 98 S. Ct. 1407, 1419, 55 L. Ed. 2d 707 (1978)). That Defendants offered to provide ILGO with other venues and opportunities to express its message may lessen the amount of damages due to ILGO, but ILGO is still entitled to recover if the City unlawfully denied the organization the opportunity to express its message

in the way it preferred. *Cf. Dellums*, 566 F.2d at 195-96 (allowing recovery so long as the award is proportional to the loss actually suffered by the plaintiffs).

Even if ILGO's lost opportunity for expression were not a compensable injury, a denial of First Amendment rights may give rise to more tangible harms. *See Stachura*, 477 U.S. at 307, 106 S. Ct. at 2543 (clarifying that a plaintiff alleging a First Amendment violation under § 1983 could seek compensatory damages for "not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . ., personal humiliation, and mental anguish and suffering.'") (alteration in original) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S. Ct. 2997, 3012, 41 L. Ed. 2d 789 (1974)). Although an association like ILGO cannot suffer humiliation or other emotional distress, ILGO's complaint sets forth sufficient general factual allegations of harm to its reputation arising from the Defendants' conduct to show standing. *See Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58 (2d Cir. 1994) (holding that, at the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice to demonstrate standing); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136-37, 119 L.Ed. 2d 351 (1992) ("On a motion to dismiss 'we presume that general allegations embrace those specific facts that are necessary to support the claim.'") (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889, 110 S. Ct. 3177, 3189, 111 L. Ed. 2d 695 (1990)). ILGO alleged in its complaint that among the "many ways" ILGO had been harmed by its inability to protest lawfully its exclusion from the Parade, "perhaps most significantly, the exclusion of and related hostility toward ILGO have divided and isolated ILGO from the rest of the Irish community." Although AOH's exclusion of ILGO from the Parade is not traceable to the Defendants' conduct, and would not be redressed by a favorable decision in this case, ILGO's complaint, broadly interpreted, does allege that the City's refusal to allow ILGO lawfully to protest its exclusion from the Parade has damaged ILGO's reputation among the Irish community in New York. Such an injury is sufficient to demonstrate standing to sue for compensatory damages, especially since one of ILGO's stated purposes is to combat prejudice against its members within the Irish community. *Cf. Southern Mutual Help Assoc., Inc. v. Califano*, 187 U.S. App. D.C. 307, 574 F.2d 518, 524 (D.C. Cir. 1977) (finding that a nonprofit health organization had standing to challenge a Department of Health, Education, and Welfare decision to discontinue funding one of its programs where the decision allegedly affected the good name and reputation of the organization among the funding community).

Finally, ILGO also has standing to assert a claim for nominal damages.

*IGLO v. Giuliani*, 143 F3d 638, 649-651 (2nd Cir. 1998).

It is undisputed that the Union has long been recognized by Defendants as the labor organization representing CSO's. Defendants have not disputed their actions as alleged in the

4

Second Amended Complaint. Rather, they seek to have the underlying action dismissed on claims that the Plaintiff Union lacks standing to pursue this litigation. Cleary, Plaintiff Union does have such standing.

As alleged in the Second Amended Complaint, "[a]s a result of Plaintiffs' continuance to unwavering lawful public objections to said public health or safety concerns, Defendants infringed upon Plaintiffs' protected speech and the association of the UNION by veiled threats of subjecting CSOs to possible disciplinary action that could necessarily lead to suspension from employment and possible termination from employment, with the goal of creating a chilling effect upon the UNION to associate and/or effectuate their First Amendment right to protected speech." (*See*, Exhibit 1, ¶ 26).

The actions alleged to have been committed by Defendants undermine the ability of the Union to effectively represent the Union members as well as diminish the confidence the members have in the Union to protect the members respective interests, including the personal safety within the courthouses they serve in the wake of COVID-19, which is a "distinct and palpable injury in fact" to the Union itself. This injury is a direct result of the Defendants' actions. An outcome of this litigation favorable to Plaintiffs would address these concerns. Consistent with the Court's holding in *ILGO v. Giuliani,* the Plaintiff Union herein has organizational and representative standing to pursue the present litigation.

The allegations contained in the Second Amended Compliant include not only allegations with respect to individual Union members but to the Union itself. The Court in *ILGO v. Giuliani* specifically addressed this issue, as follows:

> Although an association like ILGO cannot suffer humiliation or other emotional distress, ILGO's complaint sets forth sufficient general factual allegations of harm to its reputation arising from the Defendants' conduct to show standing. *See Golden*

> *Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58 (2d Cir. 1994) (holding that, at the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice to demonstrate standing); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136-37, 119 L.Ed. 2d 351 (1992) ("On a motion to dismiss 'we presume that general allegations embrace those specific facts that are necessary to support the claim.'") (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889, 110 S. Ct. 3177, 3189, 111 L. Ed. 2d 695 (1990)).

*Id.*

The Second Amended Complaint clearly asserts claims as to the undermining of the Union as a result of the Defendants' actions. The nature of Plaintiffs' claims is sufficiently pled to place Defendants on notice as to those claims. "In evaluating the sufficiency of the allegations, the court must bear in mind Rule 8(a)'s instruction that the complaint be a "short and plain statement of the claim." *Stinnes Interoil, Inc. v. Apex Oil Co.*, et al, 604 F.Supp. 978, 979 (SDNY 1985).

Defendants allege that the Union lacks standing to sue on behalf of its members and also to sue on behalf of the Union. As Union President, Thomas J. Massone has asserted claims on behalf of the Union and its membership, as well as himself as a Union member. (*See*, Exhibit 1, ¶¶ 11, 12, 13, 14, 15, 16 and 17). The lack of effort by the Defendants to protect the CSO's affects not only the members but the Union itself as its representation of Union members is undermined by the Defendants disregard for member protection. Certainly, each and every individual Union member has standing to challenge the actions of the Defendants herein. Thus, the Union is best in a position to challenge the Defendants' actions, which does affect each Union member.

Contrary to Defendant's contention, Plaintiffs have done more than simply include a request for injunctive relief. First, the wrongful actions of Defendants are detailed. As alleged in the Second Amended Complaint, specific CSO's have indeed suffered as a result of the Defendants

policies, or lack thereof, to insure their safety, including the death of CSO McGrew. The irreparable harm to Plaintiffs' safety while working as a result of the Defendants' actions is demonstrated. Further, the specific prospective relief is detailed in the Second Amended Complaint.

Plaintiffs' require the powers of this Court to remedy the actions of the Defendants herein that have placed all Plaintiff members in risk of harm given the collective policies and practices of Defendants in Plaintiffs' workplace. Plaintiff has clearly articulated the issues and concerns that the Union members are experiencing in the workplace. Prospective relief is needed to ensure the safety of the Union membership.

Certainly, each member has standing to proceed with individual claims against the Defendants herein. The Plaintiff Union is formed and exists to specifically address its members concerns within he workplace. The relief being sought pursuant to the present litigation seeks to address concerns for all Union members. As such, Plaintiff Union does have standing to sue on behalf of its members. It can seek damages and certainly the prospective relief and protections of this Court to address workplace issues. To the extent further elaboration is required within the Amended Complaint to state the prospective relief sought, Plaintiffs request leave of this Court to further Amend its pleading.

Based upon the forgoing, Defendant's motion must be denied.

**Point II**

**THE PRIMARY JURSIDICTION DOCTRINE DOES NOT BAR PLAINTIFFS' ACTION**

Defendant's next claim is that the Plaintiffs' action is barred by the Primary Jurisdiction Doctrine. Contrary to Defendants' contention, Plaintiffs' claims do not require the Court to usurp OSHA's primary responsibility. Indeed, Defendants have not shown what OSHA policy is

7

claimed to exist or how OSHA's primary responsibility, if any, concerning the issues in controversy would be usurped. Defendants have not articulated what OSHA polices have been implemented by Defendants. Indeed, it is the Defendants' own policies being challenged by Plaintiffs herein, the chilling effect of Defendants response has upon the Defendant Union and the significant harm imposed upon the Union members.

Plaintiffs' Second Amended Complaint continues to center around the issues facing the Federal Courts in which CSO's work and the Defendants' policies. This instant litigation is not the first, nor will it be the last, case centered on COVID-19 implications within the workplace. To suggest that a federal agency is better possessed to address the legal issues before this Court is without merit. No administrative proceedings or process is available to address Plaintiffs' claims herein.

Defendant cites to *Ellis v. Tribune Television Co*., 443 bF.3d 71 (2nd Cir. 2006) in support for their argument. The issues presented in *Ellis* were found to be suitable for reference to the FCC. However, no such referral is available or suitable to address the matters before this Court.

The Federal Court system has unique security concerns not common to other employers. Safety within the Federal Courts is paramount. OSHA may very well be able to offer some guidance to employers to address COVID-19 issues. However, OSHA is not suitable to address the security issues paramount to the Federal Courts or the legal issues [presented in Plaintiffs' Second Amended Complaint.

As stated by the Court in *Palmer v. Amazon.com, Inc.,* 2020 U.S. Dist. LEXIS 203683 EDNY at *13,

> There is no fixed formula for applying the doctrine. *See, United States v. W. Pac. R. Co., 352 U.S. 59, 64, 77 S. Ct. 161, 1 L. Ed. 2d 126, 135 Ct. Cl. 997 (1956).*

8

> Courts in this Circuit generally consider four factors:
>
> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
> (2) whether the question at issue is particularly within the agency's discretion;
> (3) whether there exists a substantial danger of inconsistent rulings; and
> (4) whether a prior application to the agency has been made.

Clearly, the Courts recognize no fixed formula in applying this doctrine. Plaintiff respectfully submits the issues before this Court are increasingly issues coming before Judges in every jurisdiction. To the extent any question or issue is not within the conventional experience of a Judge, expert witnesses can be presented to the Court as in any case. Further, the issue of Court security is not within the discretion of OSHA but in fact is within the discretion of the Defendants herein. Additionally, there would indeed be a risk of inconsistent application between the Courts located within the various States and holdings of the United States if a centralized security issue it address as the issues before this Court is not rendered. Lastly, Plaintiff has not made application to OSHA.

Based upon the foregoing, Plaintiff maintains this doctrine does not warrant dismissal of Plaintiffs' Second Amended Complaint. Certainly, Defendant has not offered as part of its motion exactly what OSHA or any agency can offer to address the security issues of concern. This is a speculative approach that if granted by the Court can only delay the application of safety measures to CSO's, Judges, Court personnel and the general public, all having businesses within the federal courthouses.

## Point III

**DEFENDANT IS NOT ENTITLED TO DISMISSAL OF THE AMENDED COMLAINT PURSUANT TO RULE 12(b)(6)**

Defendants are not entitled to dismissal under Rule 12(b)(6).

> The function of a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geyser v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). The complaint may be dismissed only if it appears to a certainty that plaintiff could prove no set of facts entitling him to relief. See, *McLain v. Real Estate Board*, 444 U.S. 232, 246, 62 L. Ed. 2d 441, 100 S. Ct. 502 (1980); *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). In evaluating the sufficiency of the allegations, the court must bear in mind Rule 8(a)'s instruction that the complaint be a "short and plain statement of the claim."

*Stinnes Interoil, Inc. v. Apex Oil Co.*, et al, 604 F.Supp. 978, 979 (SDNY 1985).

Plaintiffs submit they have adequately pleaded their claims in the Amended Complaint sufficiently to place Defendants on notice as to the claims before this Court and to overcome Defendant's present motion to dismiss. To the extent additional facts must be obtained regarding these claims, those facts may be obtained during the discovery phase of this litigation.

The facts pled by Plaintiff must be viewed as true and in a light most favorable to them. *Reddington v. Staten Island University Hospital*, 511 F.3d 126, 131 (2d Cir. 2007).

> Rule 12(b)(6) should be employed only when the complaint does not present a legal claim. . . . Such a claim may fail on the facts, but assessing factual support for a suit is not the office of Rule 12(b)(6).

*Johnson v. Revenue Management Corporation*, 169 F.3d 1057, 1059 (7th Cir. 1999).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) the Court held that a heightened pleading requirement is not imposed upon a Plaintiff when deciding a motion to dismiss but rather requires "only enough facts to state a claim to relief that is plausible on its face" to be pleaded.

> In a motion to dismiss under Rule 12(b)(6), "well-pleaded factual allegations in the complaint are accepted as true," and "[t]he complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff." *Woodard v. Andrus,* 419 F.3d 348, 351 (5th Cir. 2005); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). However, the long-standing principle, recently restated in *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 514, 122 S.Ct. 992, 152 L. Ed. 2d 1(2002) (quoting *Hishon,* 467 U.S. at 73), that "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," no longer applies. In *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007), the Court held that a plaintiff must go beyond mere "labels and conclusions" in stating the grounds on which she is entitled to relief, and emphasized that "a formulaic recitation of the elements of a cause of action will not do." The Court stated that it was taking an approach consistent with its prior opinion in *Swierkiewicz,* noting that in *Swierkiewicz,* "[w]e reversed on the ground that the Court of Appeals had impermissibly applied what amounted to a heightened pleading requirement by insisting that Swierkiewicz allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief. . . . Here, in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 127 S. Ct. at 1973-74.

*Rutter v. Picerne Development Corp. of Florida, et al.*, 2007 U.S. Dist. LEXIS 90690 (SDTX).

The Court in *Twombly* held that Judges should not dismiss complaints based upon a disbelief of facts or if recovery is remote or even unlikely.

> Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations; *Scheuer* v. *Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

> In adjudicating a Fed. R. Civ. P. 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.

*Fox v. Int'l Conf. of Funeral Serv. Examining Bds.*, 242 F. Supp. 3d 272, 279 (S.D.N.Y. 2017).

## **PLAINTIFFS CAN ASSERT A 1983 CLAIM AGAINST CENTERRA**

Contrary to the assertions of the Defendant, a private actor can be found to have assailed the Constitutional rights of another where, as here, the actions of Centerra are so entwined with the Marshals Service as to become indistinguishable.

> Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character" that it can be regarded as governmental action. *Evans v. Newton*, 382 U.S. 296, 299, 86 S. Ct. 486, 15 L. Ed. 2d 373 (1966); *see also Hollander*, 624 F.3d at 34 (recognizing "actions of nominally private entities are attributable to the state" under certain circumstances). A private entity, however, does not become a state actor for purposes of § 1983 merely on the basis of "the private entity's creation, funding, licensing, or regulation by the government." *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003). "Rather, there must be such a close nexus between the state and the challenged action that the state is *responsible* for the specific conduct of which the plaintiff complains." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (alteration and internal quotation marks omitted). Similarly, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999). To establish that a private actor's conduct is to be deemed state action, a § 1983 plaintiff must demonstrate that the state was involved in the specific activity giving rise to his or her cause of action; it is not enough to show merely that the state was involved in "some activity" of the private entity "alleged to have inflicted injury upon [the] plaintiff." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam) (emphasis and internal quotation marks omitted).

*Fox* at 281.

The Court in *Fox* also went on to note as follows:

> Although there is "no single test to identify state actions and state actors," *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) (internal quotation marks omitted), three main tests have emerged:
>
> For the purposes of [§] 1983, the actions of a nominally private entity are attributable to the state . . . (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated [**18] a public function by the state, ("the public function test").

*Id* at 281.

Clearly, in the matter at hand, Centerra is acting within the control of the United States Marshals Service. Indeed, any complaints Centerra has with the Marshal's Service can be addressed as part of this litigation. They have not sought to do so. However, they can be held liable pursuant to 42 U.S.C. § 1983 as they are simply the handmaidens of the United State's Marshal's serving at be direction of the United State's Marshal's Service.

Defendant next suggests that Plaintiffs' claim must be dismissed pursuant to *Bivens*. However, given that Centerra has operated as a State actor and allegations have been made against the Defendants individually and collectively, this argument must also fail.

Defendants further argument that Plaintiffs' 1983 claims must fail as a result of conclusory, vague language. However, Plaintiffs again submit they have adequately pled their claim pursuant to Rule 8. In the event this Court determines that the pleading has not been satisfactorily made, any such deficiency may be corrected through an Amendment to that pleading.

Contrary to Defendant's further assertion that Plaintiff has failed to state a claim pursuant to New York's whistleblower statute or a retaliation claim, indeed Plaintiff has alleged the Defendant's direction to CSO's to violate New York Sate law, to release personal medical information of individuals and threaten CSO's with suspension or termination if they refuse to return to work prior to completing the requisite COVID quarantine period or to object to same. The failure of Defendants to adequately protect CSO's and provide properly cleaned and safe conditions within federal courthouses has also been pled. Defendants' threats of discipline or termination against CSO's that voice objections to these policies has also been pled.

This is not vague or conclusory language as suggested by Defendants. Further detail certainly can be pursued through discovery. However, sufficient detail has been pled to place Defendants on notice of the underlying claims thus satisfy the Rule 8 pleading requirements necessary to deny Defendant's instant motion. Plaintiffs respectfully submit that the threat of adverse employment action taken against them by Defendants is sufficient to overcome Defendant's motion, as was the order of Defendants for CSO's to return to work prior to completing their full quarantine period.

Defendant's next allege Plaintiffs have not sufficiently pled allegations with respect to a public or private nuisance. As stated above, Union members work within a public space – federal courthouses. CSO's have been threatened by Defendants with adverse employment actions if they do not return to work in violation of COVID quarantine protocols, speak out with respect to the lack of PPE and proper cleaning within the courthouses, have indeed suffered as a result of Defendant's conduct and been transferred to various courthouses with no proper safety precautions after CSO's at those facilities

became sick from COVID. Clearly, the CSO's are exposed to greater risks than the general pubic within the federal courthouses where they work. Most members of the public do not ever go inside a federal courthouse; however, the CSO's go there every day to ensure the safety of the members of the public who do have business before the courts or the court personnel who work there.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request Defendant's motion be denied in all respects. Alternatively, Plaintiffs request the opportunity to further Amend its Complaint in the event the Court is inclined to dismiss pursuant to Rule 12(b)(6).

Dated:	November 29, 2021
	White Plains, New York

							Law Office of Pat Bonanno & Associates, PC

								*/s Pat Bonanno*
						By:	_____
							Pat Bonanno, Esq. (PB8549)
							Attorneys for Plaintiffs
							175 Main Street
							White Plains, NY  10601
							pbacounsel@gmail.com
							(914) 948-5545 (Phone)
							(866) 777-1418 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2021, I filed a true and correct copy of the foregoing document via the Court's electronic-filing system, which will send electronic notification of such filing to all counsel of record in the action.

                                Law Office of Pat Bonanno & Associates, PC

                                */s Pat Bonanno*
By: _____
                              Pat Bonanno, Esq. (PB8549)