```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
THOMAS J. MASSONE, as President and on behalf of                 :
the United States Security Officers                              :
                                                                 :
                              Plaintiff,                         :        20-cv-7906 (LJL)
                                                                 :
            -v-                                                  :        OPINION AND ORDER
                                                                 :
DONALD D. WASHINGTON and CENTERRA                                :
GROUP, LLC                                                       :
                                                                 :
                              Defendants.                        :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/08/2022

LEWIS J. LIMAN, United States District Judge:

Plaintiff Thomas J. Massone ("Plaintiff" or "Massone"), brings this action as President and on behalf of the United States Court Security Officers, challenging the responses of Defendants Donald D. Washington ("Washington") and Centerra Group, LLC ("Centerra," and collectively, "Defendants") to the COVID-19 pandemic.[1]  The Court previously dismissed the first amended complaint.  Dkt. No. 40.  Defendants Washington and Centerra each move to dismiss the second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

For the following reasons, Defendants' motions to dismiss are granted.

## BACKGROUND

The following facts are drawn from Plaintiff's second amended complaint, Dkt. No. 45, and are taken as true for the purposes of this motion.

---

[1] Plaintiff's claims are the same as they were in its first amended complaint, *see* Dkt. No. 19, including a claim under the First Amendment, a 42 U.S.C. § 1983 conspiracy claim, a claim of "imminent and substantial endangerment," a claim under New York Labor Law § 740, claims under 29 C.F.R. § 1910.132 (a) and (f), and a public nuisance claim.

Plaintiff is the President of the United States Court Security Officers Union (the "Union"), which represents approximately 2,200 Court Security Officers ("CSOs") who act as Special Deputy U.S. Marshals. The Union "is charged with representing the interests of all CSOs as to the terms and conditions of employment and regarding the health and welfare of its members," and "vigorously supports safety in the workplace and is actively involved in ensuring that its members are provided with a work environment that is protected from unnecessary dangers and hazards." Dkt. No. 45 at 3–4. Washington is the director of the U.S. Marshals Service, and Centerra is a private contract security provider for the U.S. Marshals Service and the employer of the CSOs. Although the CSOs are contracted through Centerra, the Marshals Service implements the "policies, practices and procedures employed at the federal court facilities." *Id.* at 1.

Plaintiff's complaint revolves around Defendants' response to the COVID-19 pandemic. Plaintiff alleges that Defendants have failed to properly clean and sterilize the working and common areas in Federal Courthouses, failed to provide adequate personal protective equipment ("PPE") to the CSOs, failed to adequately train CSOs regarding PPE, and engaged in acts of intimidation intended to chill advocacy for safety measures, and that these actions "have created a substantial and specific danger to the public health and safety in that they have created a breeding ground for and spread of COVID-19." *Id.* ¶¶ 27–34. Plaintiff alleges that as a result of these policies, individual CSOs "have been, and continue to be, exposed to COVID-19 and have in fact contracted coronavirus and died as a result while many others have been quarantined as a result of said failure." *Id.* ¶ 13. Plaintiff alleges in depth that one CSO, Anthony Charles McGrew, died from a COVID-19-related death in Georgia in 2020. *Id.* ¶ 16. Plaintiff alleges that Mr. McGrew's beneficiaries are entitled to various benefits under the Public Safety Officer

Benefits Act. *Id*. ¶¶ 17, 19, 21, 22–24. Plaintiff also alleges that Defendants "maintain[] a pattern, policy, and/or practice, officially or unofficially, written or unwritten, designed to restrict, limit or deny the free association and protective speech of Plaintiffs amongst UNION members." *Id*. ¶ 32. Plaintiff alleges that, to this end, Defendants retaliated against various CSOs by making "veiled threats of subjecting CSOs to possible disciplinary action that could necessarily lead to suspension from employment and possible termination from employment, with the goal of creating a chilling effect upon the Union to associate and/or effectuate their First Amendment right to protected speech." *Id*. ¶ 26.

Plaintiff's earlier complaints only alleged that Union members have been or will be harmed by Defendants' actions. Its second amended complaint alleges that not only Union members, but the Union itself will be injured by Defendants' alleged conduct. *Id*. ¶ 18. Specifically, Plaintiff alleges the Union "will be irreparably harmed in the core mission of the Union and its fundamental purpose to be able to zealously represent all Union members in all matters regarding workplace health and safety issues, thereby eviscerating the trust of Union members in the Union if the Defendants are allowed to openly and notoriously disregard the Union and the Union members [sic] safety." *Id*.

## PROCEDURAL HISTORY

Plaintiff filed his first complaint in the instant matter on September 25, 2020. Dkt. No. 5. Plaintiff filed an amended complaint on November 4, 2020. Dkt. No. 19. The Court issued an Opinion and Order granting Defendants' motions to dismiss the first amended complaint August 30, 2021. Dkt. No. 40. Plaintiff filed a second amended complaint on October 8, 2021. Dkt. No. 45. Defendant Centerra filed a motion to dismiss on October 29, 2021. Dkt. No. 48. Defendant Washington filed a motion to dismiss on the same day. Dkt. No. 51. Plaintiff filed responses to both motions to dismiss on December 13, 2021. Dkt. No. 55; Dkt. No. 56.

Defendants each filed replies in further support of their respective motions to dismiss on December 13, 2021.  Dkt. No. 57; Dkt. No. 58.

## LEGAL STANDARD

Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015).  To survive a 12(b)(1) motion to dismiss for lack of standing, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue."  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'"  *U.S. Airlines Pilots Ass'n ex rel. Cleary v. U.S. Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)).  Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party.  *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001).  However, where the jurisdictional challenge is fact-based, the defendant may "proffer[ ] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).  In that case, "no

presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno*, 932 F. Supp. at 95.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 . "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

Defendants move to dismiss both for lack of standing and for failure to state a claim. Because the Court finds—as in its prior Opinion and Order, *see* Dkt. No. 40—that Plaintiff does not have standing to sue, the Court does not reach the merits of the case, as there is no justiciable case or controversy present.

"Under Article III of the Constitution, the jurisdiction of federal courts is limited to the resolution of 'cases' and 'controversies.'" *Amidax*, 671 F.3d at 145. "In order to ensure that this

5

'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as the 'proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (alteration in original) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). This is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006).

Massone represents that he is bringing this lawsuit "as President of the United States Court Security Officers Union," Dkt. No. 45 ¶ 3, "on behalf of the Union" and the CSOs it represents, *id*. ¶ 4. He does not bring the suit individually or allege that he personally has a claim against defendants.[2] Because he brings this suit in his capacity as President of the Union, he

---

[2] Because Massone alleges no personal claim against the defendants or injury suffered by himself personally, he is also foreclosed from pursuing another route to litigating the claims raised in this case on behalf of the CSOs collectively—he does not, and cannot, pursue these claims in the form of a class action lawsuit, because he makes no allegations on behalf of himself that would be typical of a class of CSOs. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) ("The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' In order to justify a departure from that rule, 'a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'" (first quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979); and then quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977))). The standards for representative standing and class certification differ significantly. As the Supreme Court explained in *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Brock*, 477 U.S. 274 (1986), there are "special features distinguishing suits by associations on behalf of their members from class actions. While a class action creates an ad hoc union of injured plaintiffs who may be linked only by their common claims, an association suing to vindicate its members' interests can draw upon a pre-existing reservoir of expertise and capital that can assist both courts and plaintiffs. In addition, the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." 477 U.S. 274, 276 (1986). However, for an organization to proceed on a representative standing theory, neither the claims asserted nor the relief requested can require participation of individual organization members. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). This is not true of class actions, which instead require that (1) the class is so numerous that joinder would be impracticable, (2) the class shares common questions of law or fact, (3) the class representatives make claims or defenses that are typical of

must demonstrate that the Union either has organizational standing to sue in its own right or has representative standing—also referred to as associational standing—to sue on behalf of its members. *See Rodriguez v. Winski*, 444 F. Supp. 3d 488, 492 (S.D.N.Y. 2020) ("Under current standing jurisprudence, an organization may assert two distinct types of standing: (1) organizational standing, and (2) associational standing.").

## I. Organizational Standing

The Court's previous determination that Plaintiff lacks organizational standing, *see* Dkt. No. 40 at 7, holds fast. Plaintiff's second amended complaint does not ameliorate its previous failure to demonstrate a distinct and palpable injury to the Union. "There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490 (1975). "To do so, the organization must meet the same standing test that applies to individuals." *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998) (internal quotation and alteration omitted) (quoting *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)). "In order to have standing to bring suit, a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Thus, an organization must show "(1) a distinct and palpable injury in fact to itself as an organization; (2) that is fairly traceable to the challenged action; and (3) that a favorable decision would redress its injuries." *Winski*, 444 F. Supp. 3d at 492 (S.D.N.Y. 2020) (citing *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011)). "It is the

---

those of the rest of the class, and (4) that the class representatives will fairly and adequately represent the class. Fed. R. Civ. P. 23(a).

responsibility of the complainant to clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Warth*, 422 U.S. at 518.

Plaintiff argues that the Union itself is injured and therefore has organizational standing. Its argument, however, is tautological: The Union is injured because the Union represents its members on workplace health and safety matters, thus if Defendants disregard its members health and safety, its zealous representation of its members health and safety is compromised, and its reputation suffers. *See* Dkt. No. 45 ¶ 18.

As the Court explained in its initial Opinion and Order, organizational standing is not conferred by the mere possibility that Defendants engaged in wrongs that individually and equally affect Union members. *See* Dkt. No. 40 at 7. Plaintiff has not alleged any new facts supporting an inference that the Union *itself* suffered an injury. In its second amended complaint, Plaintiff adds only one allegation relevant to organizational standing—an assertion that the Union and its members will be "irreparably harmed" in the Union's "core mission" by Defendants' alleged misconduct. Dkt. No. 45 ¶ 18. With the exception of Plaintiff's allegation that the Union itself will be "irreparably harmed" without injunctive relief, the injuries referenced in its amended complaint match those referenced in its initial complaint—all are injuries suffered by CSOs who were allegedly exposed to or contracted COVID-19, or who were allegedly retaliated against by Defendants. *See* Dkt. No. 40 at 7. As the Court previously concluded, these injuries are not to the Union itself and do not support a finding that the Union has organizational standing. *Id*. This analysis is not impacted by Plaintiff's new allegation that the Union itself suffered an injury, given the conclusory nature of this allegation; simply stating the conclusion that the Union has been or will be injured does not mean the Union was or will be injured in fact, and the second amended complaint remains devoid of factual allegations as to

injury to the Union itself. *See Park v. Town of New Windsor Zoning Board of Appeals*, 26 N.Y.S.3d 588, 590 (2nd Dep't 2016) (holding that allegations that are "conclusory and speculative[] [are] . . . insufficient to establish standing").

## II.     Representative Standing

As explained in the Court's initial Opinion and Order, even if an organization does not have standing in its own right and has not alleged that it suffered any injury, it can still assert representative standing on behalf of its members by showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 713 (2d Cir. 2004) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

The Court previously held that the Union was not entitled to representative standing because it exclusively sought monetary relief for its members and because it made no argument as to why it satisfied the third prong of the *Hunt* test. Dkt. No. 40 at 9–10. As the Court wrote in its initial Opinion and Order, "[c]ourts consistently decline to find representative standing when a plaintiff brings a claim on behalf of its members for money damages." *Id*. at 9. The Court also explained that the Union would likely fail the third prong of the *Hunt* test because any injuries suffered by the CSOs would be "peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." *Bano*, 361 F.3d at 715 (quoting *Warth*, 422 U.S. at 515–16.). As the Court wrote: "Because Plaintiff has not demonstrated or even argued that the complaint does not seek such individualized relief or require such participation, the Union, and Massone as its President, does not have representative standing to pursue these claims for damages on behalf of its members." Dkt. No. 40 at 10.

Plaintiff's second amended complaint again seeks money damages for alleged injuries suffered by CSOs represented by the Union. *See* Dkt. No. 45 at 14. Defendants again argue that Plaintiff does not have representative standing, which courts within the Second Circuit have "consistently declined to find when a plaintiff brings a claim on behalf of its members for money damages." Dkt. No. 52 at 11. As the Second Circuit wrote in *Bano*, "[w]e know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members." 361 F.3d at 713. This is primarily because "if damages are sought on behalf of individual members, as is the case here, and not on behalf of the membership as a whole, then the relief requested differs for each member, and resolution of the case requires individual representation for each injured member. In such a case, the association in question does not have standing to sue on behalf of its members." *Richards v. N.Y.S. Dept. of Corr. Servs.*, 572 F. Supp. 1168, 1179 (S.D.N.Y. 1983). Therefore, Plaintiff still cannot pursue a claim for monetary relief on a representative standing theory.

In addition to the request for monetary relief, Plaintiff's second amended complaint seeks injunctive relief. As the Court previously noted, merely amending the complaint to include a request for prospective relief does not necessarily create representative standing. *See* Dkt. No. 40 at 10; *see also Bano*, 361 F.3d at 714 ("This does not mean, however, that an association automatically satisfies the third prong of the *Hunt* test simply by requesting equitable relief rather than damages. The organization lacks standing to assert claims of injunctive relief on behalf of its members where the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof, or where the relief requested would require the participation of individual members in the lawsuit." (internal quotations and alterations omitted) (first quoting *Warth*, 422 U.S. at 414–516; and then quoting *Hunt*, 432 U.S. at 343)).

Defendants argue that Plaintiff's request that "the allegedly offending conduct be enjoined" fails to establish representative standing because the "alleged injuries to the CSOs remain the same and still require individualized proof and participation of individual members in the lawsuit." Dkt. No. 52 at 2. Plaintiff could satisfy the first prong of the *Hunt* test; individual Union members' illnesses and deaths are concrete injuries directly resulting from Defendants' alleged failure to provide CSOs with PPP and properly sanitized workplace during a global pandemic that would give the members standing to sue in their own right. *Hunt* prong two could perhaps be satisfied if the Court accepts, *arguendo*, the Union's claims that protecting members' workplace health and safety is germane to its purpose. Satisfying *Hunt* prong three, however—concerning individual member participation—is more complicated.

Plaintiffs infrequently prevail on representative standing theories in this District, in the Second Circuit, and at the Supreme Court; the cases in which they do prevail are instructive. In *Hunt*, which concerned the constitutionality of a North Carolina statute prohibiting the display of Washington State apple grades on closed containers shipped into the state, the Supreme Court found that the Washington State Apple Advertising Commission had representative standing to challenge the statute on behalf of its members (Washington state apple growers and dealers) on the grounds that "neither the interstate commerce claim nor the request for declaratory and injunctive relief requires individualized proof and both are thus properly resolved in a group context." *Hunt*, 432 U.S. at 344. In *Brock*, the Supreme Court found that a union that, like Plaintiff, did not face an injury itself, had representative standing because the union raised "pure questions of law," such that no individual participation would be necessary. *Brock*, 477 U.S. at 287. The Supreme Court has also clarified that *Hunt*'s third prong is malleable. In *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc*, 517 U.S. 544 (1996), the

11

Supreme Court reversed and remanded the Second Circuit's determination that a union seeking damages—the calculation of which "would require the participation of individual members in the lawsuit"—should on those grounds be denied representative standing. *United Food*, 517 U.S. at 553. While the Supreme Court explained that *Hunt*'s "first prong can only be seen as itself an Article III necessity for an association's representative suit," it held that *Hunt*'s third prong should not be understood as a constitutional necessity, or even as being rooted in constitutional nature. *Id*. at 554–56. As the Supreme Court explains in relevant part:

> To see *Hunt*'s third prong as resting on less than constitutional necessity is not, of course, to rob it of its value. It may well promote adversarial intensity. It may guard against the hazard of litigating a case to the damages stage only to find the plaintiff lacking detailed records or the evidence necessary to show the harm with sufficient specificity. And it may hedge against any risk that the damages recovered by the association will fail to find their way into the pockets of the members on whose behalf injury is claimed. But these considerations are generally on point whenever one plaintiff sues for another's injury. And although we noted in *Flast* that "a litigant will ordinarily not be permitted to assert the rights of absent third parties," we recognized in *Allen v. Wright* that "the general prohibition on a litigant's raising another person's legal rights" is a "judicially self-imposed limi[t] on the exercise of federal jurisdiction," not a constitutional mandate. Indeed, the entire doctrine of "representational standing," of which the notion of "associational standing" is only one strand, rests on the premise that in certain circumstances, particular relationships (recognized either by common-law tradition or by statute) are sufficient to rebut the background presumption (in the statutory context, about Congress's intent) that litigants may not assert the rights of absent third parties. Hence the third prong of the associational standing test is best seen as focusing on these matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution.

*Id*. at 556–57 (internal citations omitted). The Supreme Court thus concluded that Congress authorized the union to sue for its members' damages, and that limited member involvement in establishing those damages should not preclude associational standing "because the only impediment to that suit is a general limitation, judicially fashioned and prudentially imposed, [thus] there is no question that Congress may abrogate the impediment." *Id*. at 558.

In line with this approach, in *New York State National Organization for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989), the Second Circuit upheld a finding that abortion rights organizations had representative standing to seek injunctions on behalf of their members against defendants who were blocking access to abortion facilities, despite the necessity of limited evidence from individual members. A finding of representative standing was also upheld despite limited member participation in *National Association of College Bookstores, Inc. v. Cambridge University Press*, 990 F. Supp 245 (S.D.N.Y. 1997), a case concerning an association of college bookstores seeking an injunction against publishers that were allegedly violating Robinson-Patman Act by overcharging association members for books. There, another court in this District acknowledged that "[s]ome individuated proof may be required to show that particular transactions were made contemporaneously (if this is a disputed issue), but not nearly enough to require each NACS member to bring suit separately." *College Bookstores*, 990 F. Supp at 250. Applying the facts of the case to the unique elements of the Robinson-Patman Act, the court found that the National Association of College Bookstores had representative standing despite recognizing that individual member participation might prove necessary. *Id*. at 249. It concluded "[t]he fact that a limited amount of individuated proof may be necessary does not in itself preclude representative standing," adding that "associational standing may be appropriate even when class certification is not," as the Supreme Court established in *Brock*. *Id*. at 250.

Even considering this flexible approach to representative standing, however, here Plaintiff has not established representative standing. Plaintiff does not solely raise issues of law, as in *Brock*. Plaintiff does not have any statutory authorization to sue on behalf of its members, as in *United Food and Commercial Workers Union* or *College Bookstores* (as Defendants note, OSHA does not provide a private right of action, *see* Dkt. No. 52 at 3). Plaintiff does not raise

13

claims for injunctive relief that require no individual member participation and are thus "properly resolved in a group context," as in *Hunt*. *Hunt*, 432 U.S. at 344. And while individual participation in claims asserted or relief requested is sometimes permissible when such participation is minor or peripheral—as was the case in *United Food*, where Congress had explicitly authorized a union to sue for its members' damages, or *Terry*, where extremely limited evidence was required from abortion rights organizations' members, or *College Bookstores*, where the Court speculated that some individuated proof may be required to document the timeline of particular transactions, but not nearly enough to require each member to individually bring suit—that is not the case here. This case concerns the medical records and diagnoses of each individual Union member allegedly impacted by Defendants' actions; without involved individual member participation, these claims cannot be asserted, nor could relief be appropriately apportioned.

Rather, Plaintiff raises claims for injunctive relief that fundamentally concern individual Union members' health, medical conditions, and medical records. In this respect, Plaintiff's case is factually more similar to *Bano*. In *Bano*, the Second Circuit found that organizations representing individual landowners and residents in Bhopal, India, who sought damages for suffering bodily injuries after exposure to chemical-contaminated water released from a nearby factory site, did not have organizational or representative standing. *Bano*, 361 F.3d at 702. Affirming the District Court's holding, the Second Circuit rejected the Bhopal organizations' attempt to gain representative standing precisely because of the medical nature of the injuries the organization members allegedly suffered:

> Although the Bhopal organizations argue that they have the ability to pursue their members' damages claims without the participation of the members themselves, we disagree. The claims are that individuals have suffered bodily harm and damage to real property they own. Necessarily, each of those individuals would have to be

14

> involved in the proof of his or her claims. The district court did not err in concluding that the organizations lack standing to pursue these claims.

*Id.* at 714–15. The Second Circuit concluded that "the organizations' claims seeking relief for their members in the form of reimbursement for the costs of medical monitoring of their physical condition were dismissible for lack of associational standing" because "[p]roof of claims for medical monitoring under New York law would similarly require individualized inquiries." *Id.* at 715. The court stated that it "cannot envision a medical monitoring program that would not require the participation of the organizations' individual members." *Id*.

The second amended complaint here fails to establish representative standing for precisely the same reasons. Plaintiff's allegations of Union members suffering bodily harm—including but not limited to contracting COVID-19 as a result of Defendants' alleged actions—"[n]ecessarily" require that "each of those individuals would have to be involved in the proof of his or her claims." *See id.* at 714. The nature of Plaintiff's claims and alleged injuries thus fail the third prong of the *Hunt* test; consequently, Plaintiff cannot establish representative standing. Without standing, the Court cannot reach the merits of the case.

## CONCLUSION

Defendants' motions to dismiss are GRANTED with prejudice.

The Clerk of Court is respectfully directed to close Dkt. Nos. 48, 51, and to close the case.

SO ORDERED.

Dated: July 8, 2022
New York, New York

_____
LEWIS J. LIMAN
United States District Judge

15